UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |  |
|---|---|---|---|
| KELLY MERRILL and ADAM COTTY | ) | | |
| | ) | | |
| Plaintiffs | ) | | |
| | ) | | |
| V. | ) | | |
| | ) | Case No: | |
| TOWN OF TOWNSEND, CHIEF ROBERT M. | ) | | |
| EATON AND SERGEANT RANDY GIRARD , | ) | | |
| in their Official and Individual capacities | ) | | |
| | ) | | |
| Defendants | ) | | |

---

COMPLAINT AND JURY DEMAND

---

## I. INTRODUCTION

In this action, the Plaintiffs Kelly Merrill and Adam Cotty ("Plaintiffs") seek redress for willful violation of the Criminal Offender Record Information System Act, <u>M.G.L.A. 6 § 177</u> as well as substantial violations of their rights under Federal and Massachusetts' Civil Rights laws and Common Law Torts. This action also arises under the Fourth Amendment to the United States Constitution, and under 42 U.S.C. § 1983.

Officers of the Townsend Police Department including, but not limited to, Chief Robert Eaton, willfully violated the provisions of the CORI and CJIS statute(s) by wrongfully obtaining and disseminating Plaintiffs' criminal record without a legitimate lawful purpose.

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because the case involves claims arising under 42 U.S.C. § 1983. The court also has supplemental jurisdiction over the other claims pursuant to 28 U.S.C. § 1367.

2. Venue in this action lies in this jurisdiction pursuant to 28 U.S.C. § 1391, because the acts described herein were committed in Massachusetts and the parties are located in Massachusetts.

## III. PARTIES

3. The Plaintiff, Kelly Merrill ("Ms. Merrill"), is a natural person with a residential address

located in Townsend, Massachusetts within Middlesex County.

4. The Plaintiff, Adam Cotty, ("Mr. Cotty") is a natural person with a residential address located in Townsend, Massachusetts within Middlesex County.

5. At all relevant times, the Defendant, Chief Robert Eaton ("Chief Eaton"), was a duly appointed police officer employed by the Townsend Police Department. Defendant Eaton is being sued in both his individual and official capacity.

6. At all relevant times, the Defendant, Sergeant Randy Girard ("Sergeant Girard "), was a duly appointed police officer employed by the Townsend Police Department. Sergeant Girard is being sued in both his individual and official capacity.

## IV. FACTS

### Background on CORI and CJIS Regulatory Violations

7. The  Massachusetts Criminal Offender  Records Information ("CORI") Act governs the dissemination of criminal records in Massachusetts. Mass. Gen. Laws c. 6 § 172.3

8. Among other things, the CORI Act states that "[a]ny individual or entity that receives or obtains criminal record information from any source in violation of [the Act], whether directly or through an intermediary, shall not collect, store, disseminate, or use such criminal offender  record information in any  manner  or  for  any  purpose." Id. § 172(1 ).

9. The CORI Act also authorizes civil suits for damages arising from any violation of sections 168 through 172 of the act. Mass. Gen. Laws c. 6 § 177.

10. To prove a CORI violation, a plaintiff must show that (1) the information at issue was protected under CORI; (2) the defendant received or obtained that protected information; (3) the defendant collected, stored, disseminated, or used that protected information; (4) the defendant did so outside the authority granted by the statute; and (5) the defendant was at fault. Mass. Gen. Laws ch. 6 § 172; Bynes v. School Committee of Boston, 411 Mass. 264, 270–71, 581 N.E.2d 1019 (1991).

11. If the defendant committed the violation willfully, the statute provides that the Court shall award exemplary damages, costs, reasonable attorneys' fees, and disbursements. See Mass. Gen. Laws c. 6 §§ 172, 177.

12. Protected Information; "Criminal offender record information" is defined by the statute as "records and data in any communicable form compiled by a Massachusetts criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release." Mass. Gen.

Laws ch. 6 § 167.

13. A "criminal justice agency" is defined by the statute as a "Massachusetts agency which performs as its principal function activities relating to crime prevention ...." 803 CMR 2.02.

14. The Townsend Police Department is a Massachusetts criminal justice agency.

15. The CORI Act allows employees of criminal justice agencies to obtain CORI to the extent "necessary for the actual performance of their criminal justice duties." Mass. Gen. Laws ch. 6 § 172(a)(1).

16. As detailed herein, on multiple occasions, members of the Townsend Police Department performed Criminal Offender Record Information checks on both of the Plaintiffs, in willful violation of the Criminal Offender Record Information System Act, M.G.L.A. 6 § 177, and knowingly obtained personal information relating to the Plaintiffs for uses not permitted under 18 U.S.C. § 2721(b), in violation of 18 U.S.C. § 2722.

### Violations of CORI and CJIS by the Townsend Police Department

17. On or about September 27, 2016, the Townsend Board of Selectman (hereinafter "Board") conducted an open meeting and at that time, discussed the appointment of Plaintiff, Kelly Merrill, to the position of assistant to the Town Administrator, James M. Kreidler Jr. (hereinafter "Town Administrator Kreidler")

18. The Board of Selectmen meeting was public and carried on Local Television.

19. Personnel at the Townsend Police Station, including a patrol officer and Defendant Sergeant Randy Girard, who were viewing the Board of Selectmen meeting.

20. Based upon Town Counsel's subsequent investigation, it was determined that Sergeant Girard subsequently instructed the Department Dispatcher to run a Board of Probation ("BOP") query on Plaintiff Kelly Merrill.

21. Defendant Chief Robert Eaton (hereinafter "Chief Eaton") "stated that Defendant Girard was 'upset' with the appointment of Plaintiff Kelly Merrill, that the police officer (Sgt. Girard) felt that an inadequate background check had been done on Ms. Merrill by the Town Administrator, and that he (Sgt. Girard), as a police officer, had the right to conduct his own background investigation." (Exhibit 1)

22. Sergeant Girard was not satisfied with the negative results of the CORI check he had run on Ms. Merrill and on October 11, 2016, Defendant Girard subsequently ran another Board of Probation "BOP" query on Plaintiff's Merrill's boyfriend, Plaintiff Adam Cotty.

23. On or about October 11, 2016, Defendant Girard provided the results of the illegal BOP queries that were run on the Plaintiffs to Chief Eaton.

24. At that time, Chief Eaton knew or should have known that illegal CJIS queries had been run on the Plaintiffs by members of his department for no legitimate police purpose, but rather in an attempt to have Ms. Merrill's employment with the Town terminated and to embarrass members of the Town's Administration for hiring her.

25. Chief Eaton failed to disclose the improper use of the CJIS system by Sgt. Girard. Rather than investigate or discipline these officers for their improper use of the CJIS system, Chief Eaton condoned their illegal use of the CJIS system and attempted to justify their additional dissemination of the confidential material.

26. When Chief Eaton was advised by Town Counsel that these CJIS checks were illegal and run for no lawful police purpose. Eaton insisted that the officers had the right to run these checks in order to conduct "background investigations" of the Plaintiffs.

27. Chief Eaton stated to Town Counsel that police officers could run these checks and that "the ends justified the means" because the police officers believed that an inadequate background had been conducted by the Town Administrator.

28. It is important to note that Defendant Eaton and others within the Department, including Defendant Randy Girard held personal animosity toward the Town Administrator and certain members of the Board of Selectmen and subsequently used the issue of the hiring of Plaintiff Merrill as a means to politically embarrass these public officials and adversely affect their positions within the Town.

29. On or about October 27, 2016, Chief Eaton intentionally disseminated the Plaintiffs' confidential CJIS information to member(s) of the Townsend Board of Selectmen for the purpose of having the Board of Selectmen revoke the hiring of Ms. Merrill.

30. The Board refused to do so, citing the illegal actions of the Chief and member(s) of his department and ordered an investigation of the Chief's conduct. On or about November 22, 2016, Defendant Eaton abruptly resigned from his position and refused to provide pertinent information regarding the illegal acquisition of the CORI data by members of the Department and its subsequent dissemination.

31. On November 23, 2016, the Town provided the following press release regarding Defendant Eaton's misconduct;

"Over the past week, however, the Chief had been directed by Town Counsel to provide certain information related to an ongoing investigation within the police department regarding unlawful background checks on private civilians (Plaintiffs) being conducted by department personnel. The Chief gathered the requested information but refused to provide it to Counsel as directed even after being provided three time extensions. Just late yesterday afternoon Counsel ordered him to immediately provide the information that he had. The Chief did not do so and then hours later, while meeting with the Board of Selectmen, the Chief removed his badge and hat, placed them on the table and left the

room…Counsel is proceeding with the investigation in spite of the fact that the Chief failed to provide the information prior to leaving." (Exhibit 2)

32. On November 27, 2016 Town Counsel Advised Chief Eaton, orally and in writing, that the investigation into the improper CJIS queries was under the jurisdiction of Town Counsel and he should take no further action.

33. On December 27, 2016 the Town provided the following press release;

"In the matter of the ongoing investigation into police department personnel unlawfully accessing and using confidential and protected background information relating to citizens of Townsend the Board offers the following update:

1. Of the four involved employees, to date, two employees have made admissions to serious violation of Townsend Police and Commonwealth of Massachusetts rules and regulations related to their unlawful use of confidential background records of Townsend citizens. These employees have cooperated with the town in this investigation and have received a level of discipline commensurate with their offenses. The town can say no more as these are now personnel matters and part of ongoing investigations.

2. One employee has been placed out on administrative leave pending the conclusion of the investigation.

3. And lastly, only employee, after having first invoked his right to not self-incriminate, has since resigned from the Townsend Police Department. The Board has accepted his resignation conditioned upon his cooperation with ongoing investigations." (Exhibit 3)

34. Despite his apparent resignation and knowledge of the illegality of these CORI/CJIS violations, Defendant Eaton continued his interference with the investigation being conducted by Town Counsel.

35. On January 31, 2017 Town Counsel advised Chief Eaton: "By this email I am advising you to discontinue your separate investigation and to immediately turn over to me any information that you have derived from this investigation which has not been previously given to me. You are not to take any further action which could interfere with the investigation being conducted." (Exhibit 4)

36. On February 8, 2017, Commissioner Slater of the Department of Criminal Justice Information Services ("DCJIS") sent correspondence to Chief Eaton, and only Chief Eaton, outlining his "findings" after reviewing the limited information that had been provided to him by Chief Eaton.

37. It is important to note that Chief Eaton deliberately made false and misleading statements to Commissioner Slater regarding the actions of members of his department in an attempt

to justify their actions in performing these CORI checks as well as attempting to conceal Eaton's own misconduct.

38. Despite the fact that Defendant Eaton made false and misleading statements to Commissioner Slater, the Commissioner nevertheless found that members of the Townsend Police Department had violated the strict requirements for accessing the CJIS system.

"On that occasion (redacted) noted that (redacted) and other Townsend PD employees were watching the proceedings of the local town meeting on television. During that meeting there was discussion about Kelly Merrill being hired as an administrative assistant for the Townsend Town Administrator. It was at that time that someone at the station ((redacted) states that she cannot remember who it was) instructed Considine to run a query on Kelly Merrill, which the dispatcher did. As part of that query, a search of the Board of Probation files was initiated. The DCJIS finds that this inquire was initiated for no criminal justice purpose." (emphasis added) (Exhibit 5)

39. On February 9, 2017 Chef Eaton was again advised by Town Counsel; "I want to emphasize that this investigation is ongoing and until it is completed all the documents associated with this matter continue to be confidential. Neither the CJIS report nor the substance of the report should be released to anyone at this point in time. You should not take any action in connection with the investigation." (Exhibit 8)

40. On February 10, 2017, Defendant Eaton sent a memorandum to the Townsend Board of Selectman and the Town Administrator regarding the CJIS investigation.

41. Despite being instructed on multiple occasions to refrain from any involvement in the investigation Defendant Eaton stated, "I would be remiss if I did not conduct my own internal investigation into the allegations of misconduct and/or criminal activity by my officers." (Exhibit 6)

42. Despite the clear finding of wrongdoing made by Commissioner Slater, Defendant Chief Eaton wrote;

"As chief law enforcement officer, **it is my lawful obligation to release credible and factual information that clears anyone from being wrongly accused.** With this being said, pursuant to the recent ruling I received Wednesday February 9, 2017 from the Commonweal of Massachusetts Department of Criminal Justice Information Services (DCJIS), this report unequivocally exonerates all 3 police officers who were wrongfully accused from any wrongdoing."

43. Despite the obvious deception in Eaton's remarks that "this (DCJIS) report unequivocally exonerates all 3 police officers who were wrongfully accuse from any wrongdoing," Defendant Eaton then threatened the Board of Selectman that if they did not make a public statement exonerating the three officers within the next two hours he would issue a public statement notifying citizens of the CJIS alleged conclusions.

44. Defendant Chief Eaton then published his false assertions regarding the conclusions reached by Commissioner Slater in the CJIS report to the Townsend community.

45. On February 10, 2017, the Town issued the following press release in contradiction to Defendant Eaton's deliberate misrepresentations;

"The Town of Townsend announced this evening that it has placed Police Chief Robert E. Eaton on administrative leave with pay pending the investigation into the improper use of the CJIS computer system by members of the police department. The board ordered an investigation into this matter in November when it learned that records containing criminal history of two individuals (Plaintiffs) who were not under police investigation were delivered to the police chief. The records on their face showed that the CJIS system had not been used for proper police purposes, a determination that has since been confirmed by the state administrators of the CJIS system." (Exhibit 7)

46. On February 16, 2017 Townsend Town Counsel, David C. Jenkins drafted a letter to Commissioner Slater of DCJIS and informed him that Chief Eaton was not authorized to have had any involvement with the investigation. Jenkins also requested a further review from Commissioner Slater that has not been forthcoming. (Exhibit 1)

47. Town Counsel stated that Chief Eaton had supplied Commissioner Slater with "erroneous and incomplete information with respect to the Town's concerns regarding the use of its CJIS System."

48. "My (Town Counsel) reading of your report (DCJIS) indicates to me that you were not informed that the October 10, 2016 CJIS inquiry was done to discredit a Town employee. I am advised that protected information concerning the employee has been referenced in social media."

49. The information obtained through the illegal CJIS query has been further illegally and widely disseminated to other members of the public by the Defendant Eaton, Defendant Girard and/or other members of the Department and subsequently published and republished through a variety of social media platforms including, but not limited to Facebook and Townsend Town Forums.

50. The only parties in possession of this protected and confidential information were the Defendant Eaton, Defendant Girard and members of the Department. The subsequent publication of CORI and CJIS protected information to others outside the Department was done maliciously and in an obvious attempt to inflict further emotional distress and embarrassment on the Plaintiffs within the community where they reside.

51. A small sampling of the salacious and malicious nature of these comments and videos regarding the Plaintiffs is attached hereto and incorporated by reference, including claiming that Ms. Merrill had a criminal history, was dealing in drugs, referring to Ms. Merrill as a "crack whore" who allegedly met Town Administrator Kreidler at a

Methadone clinic.

## COUNT I
### (Wrongful Dissemination of CORI)
### Against Defendants Eaton, Girard and the Town of Townsend

52. The Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 53 of the Complaint as fully set forth herein.

53. On multiple occasions in 2016, members of the Townsend Police Department performed Criminal Offender Record Information checks on both of the plaintiffs, without a lawful, in willful violation of the Criminal Offender Record Information System Act, M.G.L.A. 6 § 177.

54. Pursuant to Mass. Gen. L. ch. 6, § 172, the CORI may be disseminated " "only to (a) criminal justice agencies; (b) such other agencies and individuals required to have access to such information by statute ...; and (c) any other agencies and individuals where it has been determined [by the criminal history systems board (board), that the public interest in disseminating such information to these parties clearly outweighs the interest in security and privacy."

55. Pursuant to Mass. Gen. L. ch. 6, § 167, CORI is defined as ""records and data in any communicable form compiled by a criminal justice agency which concern an identifiable individual and relate to the nature or disposition of a criminal charge, an arrest, a pre-trial proceeding, other judicial proceedings, sentencing, incarceration, rehabilitation, or release."

56. The Defendants, their agents, and employees deliberately and wrongfully accessed CORI and CJIS information and subsequently disseminated it to injure, embarrass and publicly harm the Plaintiffs

57. In disseminating the Police Report and the information contained therein, the Defendants disseminated private CORI in violation of Mass. Gen. L. ch. 6, § 172.

58. As a result of Defendants' actions, the Plaintiffs suffered damages, including, but not limited to emotional distress, loss of community standing and employment opportunities.

## COUNT II
### (Mass. Gen. L. ch. 12, §§ 11H and 1H)
### Against Defendants Eaton and Girard by both Plaintiffs

59. The Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 59 of the Complaint as fully set forth herein.

60. The Defendants have maliciously interfered with and attempted to interfere with the exercise or enjoyment by the Plaintiff of rights secured by the Constitution and laws of

the United States, and of rights secured by the Declaration of Rights and laws of the Commonwealth of Massachusetts by means of threats, intimidation or economic coercion.

61. Defendants' interference with Plaintiff's rights included the wrongful disclosure of the Police Report and the CORI contained therein to Plaintiff's employer, the Town of Townsend, which was intended to cause and caused a deprivation of Plaintiff's property interests in continued public employment and her occupational liberty interest in preserving her future professional reputation, earning capacity and employment opportunities, and which interfered with Plaintiff's procedural due process rights by means of economic coercion, threats and intimidation.

62. As a result of the Defendants' actions, the Plaintiff suffered damages.

COUNT III
(42 U.S.C. § 1983)

63. The Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 63 of the Complaint as fully set forth herein.

64. Defendants' actions as described above were performed under color of law.

65. Defendants' actions subjected, or caused the Plaintiff to be subjected, to a deprivation of her rights, privileges and immunities secured by the Constitution and Laws of the United States in violation of 42 U.S.C. § 1983.

66. More specifically, Defendants' actions as described above subjected or caused the Plaintiff to be subjected, to a deprivation of her property interests in continued public employment and liberty interests in preserving future professional reputation, earning capacity and employment opportunities, in violation of Plaintiff's rights to procedural due process.

67. As a result of Defendants' actions, Plaintiffs' suffered damages.

COUNT IV
(Invasion of Privacy)

68. The Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 68 of the Complaint as fully set forth herein.

69. Pursuant to Mass. Gen. L. ch. 214, § 1B, the Plaintiffs have a "right against unreasonable, substantial or serious interference with his (their) privacy.''

70. The Defendants' dissemination of the CORI and related CJIS information and the information contained therein constituted an unreasonable, substantial or serious interference with Plaintiffs' privacy in violation of Mass. Gen. L. ch. 214, § lB.

71. As a result of Defendants' conduct, the Plaintiffs have suffered damages, emotional concern and distress, loss of reputation.

## COUNT IV
### (Intentional Infliction of Emotional Distress)

72. The Plaintiffs repeat and incorporate by reference the allegations contained in Paragraphs 1 through 72 of the Complaint as fully set forth herein.

73. By their extreme and outrageous conduct, as described, including but not limited to willfully violating the provisions of the CORI statute by obtaining and disseminating Plaintiffs' criminal record without a lawful purpose the Defendants intentionally and/or recklessly inflicted and caused severe emotional distress to both Plaintiffs.

74. As a direct and proximate cause of the acts and omissions of Defendants, the Plaintiffs' have suffered damages.

THE PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY ON ALL COUNTS.

Respectfully submitted,
For Plaintiffs,
By their attorney,

/s/ Timothy M. Burke
Timothy M. Burke, BBO #065720
160 Gould Street, Suite 100
Needham, MA 02494-2300

Dated:        June 7, 2017

Certificate of Service

I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be mailed via first class mail to those registered as non-participants.

Dated:        June 7, 2017                    /s/ Timothy M. Burke